IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION[1]

LOIS GRAY                                                                                        PLAINTIFF

VS.                                                        CIVIL ACTION NO. 3:12cv788-CWR-FKB

CAROLYN W. COLVIN, COMMISSIONER[2]                                      DEFENDANT
SOCIAL SECURITY ADMINISTRATION

_____

REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

        This cause is before the undersigned United States Magistrate Judge for a Report and

Recommendation regarding the appeal by Lois Gray of the Commissioner of Social Security's

final decision denying Gray's application for a period of disability and Disability Insurance

Benefits (DIB).  In rendering this recommendation, the Court has carefully reviewed the

administrative record regarding Gray's claims (including the administrative decision, the medical

records and a transcript of the hearing before the Administrative Law Judge ("ALJ")); Plaintiff's

Motion for Summary Judgment and related filings; and Defendant's Motion to Affirm the

Decision of the Commissioner with its accompanying brief.  For the reasons discussed below,

the undersigned recommends that Defendant's Motion to Affirm the Decision [9] be granted, and

Plaintiff's Motion for Summary Judgment [7] be denied.

_____

        [1]With the passage of H.R. 2871, Realignment Of The Southern Judicial District of
Mississippi, Pub. L. No. 113-61, 127 Stat. 665 (2013), signed into law on December 20, 2013,
the former five divisions of the Southern District of Mississippi were consolidated into four
divisions.  The former Jackson Division has been redesignated as the "Northern Division."

        [2]Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Carolyn W.
Colvin is hereby substituted for Commissioner Michael J. Astrue as Defendant in this suit.

## I. FACTS

### A.  Procedural History

Gray was born on March 3, 1957, and was fifty-four years of age on the date of the ALJ's decision. [6] at 102, 26.[3] She applied for a period of disability and DIB on March 9, 2010, with an onset date of August 9, 2008. Id. at 102.  Plaintiff alleges that the illnesses, injuries, or conditions that limit her ability to work are a right shoulder and elbow injury.  Id. at 135.   She completed one year of college. Id. at 136.  Her past work history includes employment as a correctional facility postal inspector and a day care monitor.  Id. at 137.

Gray's applications were denied initially and upon reconsideration.  She requested an administrative hearing, which was held on June 27, 2011.  Id. at 12.  On July 8, 2011, the ALJ issued an unfavorable decision finding that Gray was not disabled.  Id. at 9 - 29.  Thereafter, the Appeals Council denied review, thereby making the decision of the ALJ the final decision of the Commissioner.  Id. at 1-5.  Gray then brought this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

### B.  Hearing Decision

In his decision, the ALJ worked through the familiar sequential evaluation process for determining disability.[4]  The ALJ found that Gray has the severe impairments of obesity, status

---

[3]Citations to the administrative record reflect the original pagination of the record.

[4]In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

    (1)      whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

    (2)      whether the claimant has a severe impairment (if not, a finding of "not disabled"

post right shoulder decompression, and status post lateral epicondyle release. Id. at 14. In addition to the foregoing severe impairments, the ALJ found that Gray has non-severe impairments of asthma, deQuervain's tenosynovitis, and headaches. Id. at 20. Considering these severe and non-severe impairments and closely analyzing the medical record, the ALJ concluded that Gray does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 20. The ALJ then looked to the entire record, discussed in detail his assessments and reviews of the medical record, and made particular findings supporting his conclusion that Gray has the residual functional capacity to perform light work except not requiring overhead work with the right upper extremity. Id. at 20-25. With these limitations in mind, the ALJ determined that Gray is capable of performing her past relevant work as a postal inspector as it is generally performed in the national economy. Id. at 25. Accordingly, the ALJ found that she was not disabled from August 9, 2008, through the date of the decision, July 8, 2011. Id. at 25-26.

---

is made);

(3)     whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4)     whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5)     whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

See 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

C.  Medical History

The Court has reviewed the medical record, as well as the detailed medical record summaries as set forth in the hearing decision, Plaintiff's filings, and Defendant's brief, and has determined that a detailed recitation of the medical record is not necessary in this Report and Recommendation.

II. STANDARD OF REVIEW

The undersigned recognizes that this Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied.  42 U.S.C. § 405(g); Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990).  The Fifth Circuit has defined the "substantial evidence" standard as follows:

> [s]ubstantial evidence means more than a scintilla, less than a preponderance, and is:
> such relevant evidence as a reasonable mind might accept to support a conclusion.  It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988 )(quoting Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)(citations omitted)).  In applying the substantial evidence standard, the court must carefully examine the entire record but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.  Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.  Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).  Hence, if the

Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this court.  Paul v. Shalala, 29 F.3d 208, 210 (5th Cir. 1994), overruled on other grounds, Sims v. Apfel, 530 U.S. 103, 120 S.Ct. 2080, 147 L. Ed. 2d 80 (2000).

### III. DISCUSSION OF THE ALLEGED ERRORS AND APPLICABLE LAW

Gray argues that the ALJ's decision should be reversed on the following bases:

1. The ALJ failed to resolve conflict between the [Dictionary of Occupational Titles ("DOT")] and [Vocational Expert ("VE")] testimony and relied upon conflicting VE testimony to support his finding that Claimant is not disabled.

2. The ALJ failed to properly consider all of Claimant's severe impairments.

> A.  The ALJ's evaluation of Claimant's impairment of de Quervain's tenosynovitis fails to apply the *de minimis* standard and the subsequent [Residual Functional Capacity ("RFC")] finding is not therefore based upon substantial evidence.

> B.  The ALJ's explanation for the basis of his conclusions regarding the severity of the Claimant's impairments was insufficient.

> C.  The ALJ failed to consider the combined effect of all of the Claimant's impairments as required by SSR 96-8p.

[8] at 1-2.  In response, the Commissioner argues that substantial evidence supports the ALJ's decision that Gray is not disabled, that the ALJ applied proper legal standards, and that the Commissioner's decision must be upheld.

Once again, the standard of review for this court is clear.  The ALJ's decision on disability must be upheld if it is supported by substantial evidence.  The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who had an opportunity to observe whether he or she seemed to be disabled.  Harrell v. Bowen, 862 F.2d

471, 480 (5th Cir. 1988). When the record contains substantial evidence to support the ALJ's decision, the Court must give considerable deference to the ALJ's evaluation of the plaintiff's credibility and severity of limitations. <u>Wren v. Sullivan</u>, 925 F.2d 123, 128 (5th Cir. 1991). Furthermore, as stated above, if the proper legal standards were applied, the decision is conclusive and must be upheld by this court. <u>Paul</u>, 29 F.3d at 210, <u>overruled on other grounds</u>, <u>Sims</u>, 530 U.S. at 103.

> A.  Did the ALJ fail to resolve conflict between the DOT and VE and rely upon conflicting VE testimony to support his finding that Claimant is not disabled?

Gray first argues that the ALJ erred when he relied upon what she characterizes as an unresolved conflict between the VE testimony and the DOT.  Citing to SSR 00-4p, Gray asserts that when the vocational evidence provided by the VE is not consistent with the information in the DOT, the ALJ must resolve this conflict before relying on the VE testimony to support a decision that the individual is not disabled.  Plaintiff argues that, in this instance, the ALJ failed to resolve this "apparent conflict and nevertheless relied upon the VE testimony to decide this case unfavorably at Step 4 of the sequential process." [8] at 12.   In particular, Gray alleges that the DOT indicates that the job of postal inspector requires "frequent reaching," and that the VE testified that Gray, despite her limitation of no overhead reaching with her right hand, could perform this job.  Gray argues that the ALJ failed to inquire if the VE's testimony was consistent with the DOT and that the ALJ failed to resolve the conflict that Gray's counsel made apparent in cross-examination.[5]

---

[5]A review of the ALJ's finding that Gray can perform past relevant work as a postal inspector will aid the reader in this instance.  The ALJ found, as follows:

> The claimant has performed her past job as a postal inspector sufficiently long to

The Commissioner responds that while Gray argues that there is a conflict between the VE and the DOT, there is no actual conflict.  The Commissioner asserts that SSR 00-4p clarifies that the DOT lists the maximum requirements for a position as it is generally performed, not the full range of requirements.  The Commissioner points out that the VE was aware of Gray's limitation on overhead reaching with her right arm.  Thus, the Commissioner asserts that the VE's testimony does not conflict with the DOT but, instead, clarifies how the broad categorizations of the DOT and The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO") apply to Gray's case.

This Court finds the Fifth Circuit's opinion in Carey v. Apfel, 230 F.3d 131 (5th Cir. 2000), instructive under the particular facts of this case.  As the Fifth Circuit observed in Carey, the Dictionary of Occupational Titles is not comprehensive "in that it cannot and does not purport to include each and every specific skill or qualification for a particular job."  Id. at 145(citing Fields v. Bowen, 805 F.2d 1168, 1171 (5th Cir. 1986)).   Furthermore, the Fifth

---

learn the job, and has performed it in the past at a level of substantial gainful activity.  Hence, it is considered to be past, vocationally relevant work as defined in the Regulations (20 CFR 404.1565).

In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned notes the vocational expert testified at the hearing that this job of postal inspector, as generally performed in the national economy and as described in the [DOT] (code # 168.267-062) required no more than the limited range of light work described above.  Her past work, therefore, as it is generally performed in the national economy, falls within the purview of her residual functional capacity.  Hence, the undersigned finds that the claimant is able to perform this past[] job as it is generally performed in the national economy.  Hence, the claimant's impairments do not prevent her from performing her past relevant work, and she is not under a "disability" as defined in the Social Security Act, as amended.

[6] at 25.

Circuit has recognized that "the DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." Id.   The Social Security Rulings have recognized this limitation of the DOT's role.  As stated in SSR 00-4p,

> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

SSR 00-4p, 2000 WL 1898704, at *3.  As explained in Carey, the Fifth Circuit stated that it would adopt "a middle ground approach, in which neither the DOT nor the vocational expert testimony is per se controlling, [that would permit] a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs." Carey, 230 F.3d at 147.

In this case, the ALJ presented to the vocational expert hypothetical questions that contained all limitations supported by the record and recognized by the ALJ, as well as some limitations, which, as demonstrated by his opinion, were not found by the ALJ. [6] at 61-66.  In response to one hypothetical question, the vocational expert explained that Gray could still perform the postal inspector job as specified in the DOT.  Id. at 62.[6]  Gray's counsel questioned

---

[6]The Court also observes that the ALJ and vocational expert clarified that part of Gray's job as a postal inspector with a correctional facility was performed at the "heavy" level because she had to go to the post office and actually collect the mail. [6] at 62. After considering the ALJ's hypothetical question based upon an individual who was limited to the light exertional level and could not reach above the shoulder with the right dominant arm, among other limitations not at issue here, the vocational expert concluded that such an individual would be able to perform the job of postal inspector as performed in the DOT, but not as Gray performed the job. Id.

-8-

the vocational expert about her determination, and the VE explained that, given the ALJ's limitation in the hypothetical of not reaching above her shoulder with her right dominant hand, she could still perform the job of postal inspector as defined by the DOT because she could still reach and manipulate with her left arm.  Id. at 64-66.

Given this testimony by the VE, with ample opportunity given for cross-examination, the undersigned finds that the there is simply no basis for reversal or remand.  The VE fully explained that, given the hypothetical question presented by the ALJ, a person with those defined limitations, including not reaching above her shoulder with her right dominant hand, could perform the job of postal inspector as set forth in the DOT.  The VE specifically listed the requirements of the job as set forth in the DOT and explained that Gray could still perform the job despite her limitation of not being able to reach above her shoulder with her right dominant hand.  Id. at 64-66.  Thus, the VE acknowledged the maximum requirements of the job as set forth in the DOT, but determined, based upon her experience as a source of more specific information, that Gray could still perform the job, despite her limitations.  Moreover, as borne out by the record, Gray's counsel was given ample opportunity to present alternative hypothetical questions to the VE and to suggest deficiencies and purported defects in the ALJ's hypothetical questions. Id. at 64-69; see Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994)(finding that a defective hypothetical question can produce reversible error when claimant is not afforded the opportunity to correct or suggest deficiencies in the ALJ's question to the VE).  The Court, therefore, concludes that the record reflects an adequate basis for the ALJ's reliance on the VE's testimony. Thus, the Court finds that there is substantial evidence supporting the ALJ's decision that Gray can perform the job of postal inspector as set forth in the

DOT, and the ALJ's decision should be upheld.

B. Did the ALJ fail to properly consider all of Claimant's severe impairments?

1.  Does the ALJ's evaluation of Claimant's impairment of de Quervain's tenosynovitis fail to apply the *de minimis* standard and is the subsequent [Residual Functional Capacity ("RFC")] finding not therefore based upon substantial evidence?

Gray next argues that the ALJ failed to consider properly all of her severe impairments. She first asserts that her de Quervain's tenosynovitis[7] should be considered as a severe impairment based upon her history of treatment for this condition by Howard T. Katz, M.D., from October 2009 to January 2011, and her complaint to Forest Physical Therapy on November 19, 2009.  Gray argues that the ALJ, in error, relied upon one visit to the doctor wherein he described the condition as "asymptomatic" to discount the condition as non-severe and provide no limitation in the RFC for this condition.  Gray also asserts that she continued to complain of pain related to this condition during her hearing.   The Commissioner responds that substantial evidence supports the ALJ's finding that this condition is non-severe.

The undersigned has reviewed the record and finds that substantial evidence supports the ALJ's determination that this condition was not severe.[8]  Although Dr. Katz first diagnosed Gray with de Quervain's in her left hand in October 2009, he failed to assign her any limitations from

---

[7]De Quervain's disease is defined as "fibrosis of the sheath of a tendon of the thumb." Stedman's Medical Dictionary 495 (26th ed. 1995).

[8]        [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985).

this diagnosis.  Furthermore, her symptoms were alleviated by wearing a brace and by an injection. [6] at 467-468.  In March and April 2010, Dr. Katz commented that her de Quervain's was asymptomatic. Id. at 464, 466.  During subsequent visits within twelve months of the initial diagnosis and later visits, Dr. Katz failed to mention the condition and ceased diagnosing it.  Id. at 521-524 and 517-520.  Not only has Gray failed to demonstrate that this alleged impairment meets the durational requirement for a "severe" impairment, "[t]he mere presence of some impairment is not disabling *per se*."  Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983).

With a broad brush, Gray also complains that the ALJ failed to account for this condition when he determined her RFC and argues that the limitations this condition places upon her remain "unclear" in the ALJ's opinion.  To the contrary, the Court finds that substantial evidence supports the ALJ's decision, and his view of this condition is clear.  The ALJ fully discussed this condition and the lack of supporting evidence to consider it a "severe" condition.   He analyzed her ability to grasp and grip with either hand as established by the medical evidence, reviewed her daily activities, reviewed her treatment for this condition, and assessed her complaints of pain related to the condition. [6] at 21-24.   Clearly, the ALJ's opinion shows that he considered Gray's complaints of pain, along with her activities and the medical evidence.  The undersigned finds that the record contains substantial evidence to support the ALJ's decision and must give considerable deference to the ALJ's evaluation of the plaintiff's credibility and severity of limitations. Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991).  Accordingly, this argument does not provide a basis for reversal or remand.

### 2. Is the ALJ's explanation for the basis of his conclusions regarding the severity of the Claimant's impairments sufficient?

In another iteration of the argument addressed above, Gray argues that the ALJ failed to

fully explain his decision to find her de Quervain's tenosynovitis as non-severe because he failed to "connect the evidence to the conclusion through an 'accurate and logical bridge.'" Stewart v. Astrue, 561 F.3d 679, 684 (7th Cir. 2009). Gray focuses on the ALJ's conclusion finding this condition as non-severe because it had been described as "asymptomatic." But, Gray fails to acknowledge the ALJ's long discussion of her symptoms, conditions, the medical records, and his observations of her at the hearing. In particular, the ALJ noted that de Quervain's tenosynovitis was first diagnosed in October 2009, and that Gray received an injection for it in December 2009. [6] at 17. The ALJ followed with summaries of doctor's visits in April 2010, October 2010, January 2011, and April 2011, at which times the treating doctor either commented that Gray's de Quervain's tenosynovitis was asymptomatic or ceased diagnosing it. Id. at 17-18. The ALJ also noted that although Gray wears braces on both wrists, she continues to drive, does housework with her left hand, and continues to cook. Id. at 18. The ALJ also commented on the objective testing regarding Gray's grip strength in both hands, as well as her testimony regarding what she can and cannot do with her hands. Id. at 19.

The Court notes that the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who had an opportunity to observe whether he or she seemed to be disabled. Harrell v. Bowen, 862 F.2d 471, 480 (5th Cir. 1988). Again, the ALJ's lengthy opinion shows that he considered Gray's complaints of pain, along with her activities and the medical evidence. The undersigned finds that the record contains substantial evidence to support the ALJ's decision that Gray's de Quervain's tenosynovitis is non-severe. Thus, the undersigned must give considerable deference to the ALJ's evaluation of Gray's credibility and severity of limitations, Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991), and this argument

does not provide a basis for reversal or remand.

3.  Did the ALJ fail to consider the combined effect of all of
Gray's impairments as required by SSR 96-8p?

In an argument consisting of three sentences, in addition to a quote from SSR 96-8p,

Gray argues that the ALJ failed to consider the combined effect of her impairments. Because

Gray does not point to specific language in the opinion, the Court has no choice but to guess

which section Gray attacks.  The part of the ALJ's decision which specifically discusses the

combined effect of her impairments states, as follows:

> The claimant's impairments are not accompanied by specific findings or levels of
> severity required for a finding of disability under any subsection of Appendix 1,
> Subpart B, Regulations No. 4.  More specifically, she does not have any
> combination of impairments which are medically equivalent to any impairment
> listed in Appendix 1.  Her impairments do not approach the level of severity
> contemplated for a finding of disability under Appendix 1.  The undersigned,
> therefore, concludes that the claimant does not have an impairment listed in or
> combination of impairments medically equivalent to one listed in Appendix 1,
> Subpart P, Regulations No. 4.

[6] at 20 (Finding 4).

Once again, Gray seizes upon a conclusion by the ALJ and fails to acknowledge the vast

portions of the ALJ's opinion in which he discusses the bases for the conclusion.  While the ALJ

did not discuss in great detail the combined effect of her impairments in his conclusion regarding

a "combination of impairments," he did address the issue.  In addition to this conclusion, he set

forth a lengthy and detailed discussion of the medical evidence, her everyday activities, her

hearing testimony, and her various alleged impairments.

In addition, at Finding 5, [6] at 20, when the ALJ concluded her RFC is light work except

not requiring overhead work with the right upper extremity, he went into great detail discussing

his reasons for this conclusion.  He summarized her medical records, her activities of daily

-13-

living, and her subjective complaints of pain and limitations. [6] at 21-25.  He also discussed the
objective medical evidence and gave his reasons for discounting the opinion of Dr. Lee, whose
RFC did not agree with his conclusion.

Although the conclusions at Findings 4 and 5 are brief, language briefer than this has
been upheld.  See Jones v. Dep't of Health and Human Servs., 941 F.2d 1529, 1533 (11th Cir.
1991)(in which the ALJ repeated the impairments he recognized and stated that Plaintiff did not
have "'an impairment or combination of impairments listed in, or medically equal to one listed in
Appendix 1, Subpart P, Regulation No. 4.'").  There is also no evidence to support an argument
that the ALJ "so fragmentized [Gray's] several ailments that he failed properly to evaluate their
effect in combination upon [Gray]."  Owens v. Heckler, 770 F.2d 1276, 1282 (5th Cir. 1985).
Furthermore, as discussed above, the ALJ went into great detail discussing the bases for his
conclusions.  The ALJ's opinion is supported by substantial evidence, and this alleged error does
not provide a basis for remand or reversal.

## IV. CONCLUSION

In sum, the undersigned finds that the ALJ correctly analyzed the applicable law, that
substantial evidence supports his decision, and that no reversible error exists.  Accordingly, the
undersigned recommends that the Motion to Affirm the Decision [9] be granted, and Plaintiff's
Motion for Summary Judgment [7] be denied.

The parties are hereby notified that failure to file written objections to the proposed
findings, conclusions, and recommendation contained within this report and recommendation
within fourteen (14) days after being served with a copy shall bar that party, except upon
grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court.  28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as

amended, effective December 1, 2009); <u>Douglass v. United Services Automobile Association</u>, 79

F.3d 1415, 1428-29 (5th Cir. 1996).

  Respectfully submitted, this the 26th day of February, 2014.


       <u>  /s/ F. Keith Ball     </u>
       UNITED STATES MAGISTRATE JUDGE